**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| Plaintiff | : | Case No: 2:17-cr-146 |
| v. | : | |
| | : | JUDGE MARBLEY |
| | : | |
| **DARRELL BRYANT and** | : | |
| **GIFTI KUSI** | : | |
| | : | |
| Defendants. | : | |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION IN LIMINE**

Now comes the United States of America, by and through United States Attorney, Benjamin C. Glassman, and Assistant United States Attorneys Ken Affeldt and Maritsa Flaherty, and respectfully request this court deny Defendants Motion in Limine. The reasons for the United States request are provided in the attached memorandum.

Respectfully submitted,

BENJAMIN C. GLASSMAN
UNITED STATES ATTORNEY

/s/ Kenneth F. Affeldt
KENNETH F. AFFELDT (0052128)
MARITSA A. FLAHERTY (0080903)
Assistant United States Attorneys
303 Marconi Boulevard, Suite 200
Columbus, OH 43215
Phone: (614) 469-5715
Fax: (614) 469-5653
ken.affeldt@usdoj.gov
maritsa.flaherty@usdoj.gov

**MEMORANDUM**

In his Motion in Limine, Defendant Darrell Bryant (Defendant Bryant) argues that the United States should not be permitted to introduce evidence surrounding an encounter on June 25, 2016 between Defendant Bryant and a Health and Wellness Medical Center (HWMC) patient because the evidence is not "inextricably intertwined" with the health care fraud and conspiracy charges, and fails under a Rule 404(b) analysis.

Defendant's claim is without merit as the evidence is "intrinsic" and "inextricably intertwined" with the charged health care fraud scheme, or in the alternative, the evidence is admissible pursuant to Fed. R. Evid. 404(b) as it provides evidence of defendant's intent, knowledge and plan, and its probative value is not substantially outweighed by its prejudicial nature.

**I.    BACKGROUND**

On July 6, 2017, a Federal Grand Jury returned a five count Indictment charging Defendants Darrell Bryant and Gifti Kusi (Defendant Kusi) in Count One with conspiracy to commit health care fraud, in violation of 18 U.S.C. §1349, and in Counts Two through Five with health care fraud, in violation of 18 U.S.C. §1347 and §2.

The Indictment alleges that defendants, as pharmacists and owners and operators of Health and Wellness Pharmacy (HWP), a compound pharmacy located in Dublin, Ohio, and Health and Wellness Medical Center (HWMC), a opioid drug treatment facility also located in Dublin, Ohio, engaged in a scheme to enrich themselves by submitting false claims, or causing false claims to be submitted: 1) for prescriptions that were not medically necessary, were never provided to patients and/or were not legitimately prescribed by a physician, and 2) for individual psychotherapy counseling services that were never provided to HWMC patients, were provided in a group setting

rather than individually, and/or provided by counselors that were unqualified to provide the services. (ECF No. 4 ¶¶ 44,75-83.) Specifically, as it relates to the fraudulent prescription claims, it is alleged that defendants billed Medicaid for prescription drugs, including pain, scar and acne creams knowing that physicians had never met with patients or established a physician/patient relationship to determine the medical necessity of the prescriptions. (*Id.* ¶ 57 & 58.) To maintain and advance the fraud scheme, the Indictment alleges that defendants acted outside and abused their authority as pharmacists by making medical decisions about the types of drugs customers of HWP and/or HWMC patients would receive, as well as which patients received the prescriptions (*Id.* ¶74.) Under Ohio law, neither defendants Bryant or Kusi, as pharmacist, were permitted to write prescriptions, dictate which drugs should be prescribed to patients, or determine to whom the drugs should be prescribed. (*Id.*)  In an effort to conceal their limited authority and further perpetuate the scheme, the defendants abused their positions by presenting themselves to HWMC patients as "Dr. Bryant" and "Dr. Kusi" causing many patients to believe that they were licensed physicians and treating physicians. (*Id.* ¶78). In furtherance of the scheme, Defendant Bryant also abused his position of trust with female patients for his own sexual gratification (*Id.* ¶84). A specific incident showing the manner in which defendant abused his position of trust is explicitly provided in paragraph 85 of the Indictment. The indictment references an incident on June 25, 2016 when a Medicaid patient attempting to seek treatment for her opioid addiction went to her scheduled medical appointment at HWMC. (*Id.* ¶85). While the patient was waiting to receive her suboxone prescription, Defendant Bryant directed her to a room in the back of the clinic. (Id.) Once he had the patient isolated inside the room, Defendant Bryant proceeded to unzip his pants, pull down her shirt and ejaculate on her. (*Id.*) Only after sexually gratifying himself did he allow the patient to receive her suboxone prescription (*Id.*).  The prescription which the patient received

3

from Defendant Bryant was not legally prescribed because it had been pre-signed several days before the encounter by a physician who never saw or examined the patient on June 25th. The prescription was subsequently submitted to and paid for by the Ohio Medicaid Program.

## II. Law and Argument

a. <u>Evidence of Defendant Bryant's Conduct Surrounding The Release of a Suboxone Prescription to a Female Medicaid Patient at HWMC is Admissible as Intrinsic And Inextricably Intertwined with the Health Care Fraud Scheme.</u>

The Sixth Circuit has consistently held that "Rule 404(b) does not apply when the challenged "other acts" evidence is 'inextricably intertwined with evidence of the crime charged,' or when the acts are 'intrinsic,' or 'part of a continuing pattern of illegal activity.'" *United States v. Rozin*, 664 F. 3d 1052, 1063 (6th Cir. 2012) (citations omitted). *See also United States v. Henderson*, 626 F.3d 326, 338 (6th Cir. 2010)("Where the challenged evidence is 'intrinsic' to, or 'inextricably intertwined' with evidence of, the crime charged, Rule [404] is not applicable."). In *United States v. Gonzalez*, 501 F.3d 630, 639 (6th Cir. 2007), the Sixth Circuit provided a very broad definition of what qualifies as intrinsic evidence:

This court has … employed language approving of such a broad definition, stating that intrinsic evidence not subject to Rule 404(b) '[t]ypically … is a prelude to the charged offense, is **directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.'** *Id.* (citing *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir.2000))(emphasis added)

Like in *Gonzalez*, the evidence the United States is seeking to introduce in this case is directly probative of the offense charged, arises from the same event of the charged offenses, forms an integral part of the witness's testimony and completes the story of the charged offenses.

First the evidence is directly probative of the charged offense as it provides the manner in which the defendant executed the health care fraud scheme and is explicitly alleged in the indictment. As part of the health care fraud scheme and conspiracy, the Indictment alleges that

4

Defendants' Bryant and Kusi knowingly submitted or caused the submission of fraudulent claims by billing for prescriptions that they knew were not medically necessary, were not provided to patients or were not legitimately prescribed. (*Id.* ¶ 44.) Furthermore, it is expressly alleged that in furtherance of the scheme, Defendant Bryant represented himself as a "licensed medical doctor" who would "abuse his position of trust with some female patients, for his own sexual gratification" (*Id.* ¶¶ 78 & 84.) As proof of the manner in which he engaged in the scheme, the indictment specifically references the June 25th encounter between Defendant Bryant and a female patient.( *Id.* ¶85.) Thus, as express in the indictment, the substance of the charged health care fraud scheme is that the defendant caused the submission of fraudulent claims for prescriptions that were not legitimately prescribed, and that the manner in which he executed the scheme included abusing his position of trust as clinic owner and pharmacist, and deliberately portraying himself as physician authorized to determine the type of prescription drugs patients would receive and who would receive them.

The incident on June 25, 2016 clearly illustrates such conduct by Defendant Bryant and, therefore, is highly probative of the health care fraud scheme. Specifically, the evidence the government intends to introduce as proof of the incident is the testimony of the patient involved in the incident, "Patient A", who will testify as follows:

> She is a heroin addict and in June, 2016, she was attempting to receive treatment at HWMC for her opioid addiction. On June 25, 2016, approximately two weeks after her first visit to HWMC, she went to her scheduled appointment at HWMC to receive treatment. She used heroin a few days prior to her appointment as she was still struggling with her addiction. Patient A did not conceal her heroin use and, in fact, communicated her recent relapse to a HWMC employee conducting urine drug screens. After providing a dirty urine sample, she briefly met with a HWMC physician who prescribed two medications to help alleviate her anxiety and treat her blood pressure. [1] She received prescriptions for these two medications directly from the physician that day, but never received from him a suboxone prescription. Following her brief visit with the physician, Patient A went to her counseling session at HWMC. After her counseling session, she

---

[1] HWMC records will show that the physician she saw on that day and who wrote the prescription for the anxiety and blood pressure medications was Dr. Franklin Demint

waited in the "waiting area" to receive her suboxone prescription. It was customary for HWMC patients to receive their prescriptions at the end of their visit. She was extremely nervous about whether she would receive her suboxone prescription because of her recent heroin use and dirty urine screen. While waiting for her prescription, Defendant Bryant approached her in the waiting area. Patient A will testify that she referred to Defendant Bryant as "Dr. Brian Bryant" and that she, like many other HWMC patients, believed he was a licensed physician. Defendant Bryant motioned with his hand to follow him. Knowing that she tested positive for heroin and fearing that she might not receive her suboxone prescription from "Dr. Brian Bryant", she attempted to explain to him why she had recently used heroin. Defendant Bryant had no response, but lead her into a room in the back of the facility and locked the door. Patient A will testify that Defendant Bryant then sat on a couch in the room, unzipped his pants, pulled down Patient A's shirt and proceeded to masturbate until he ejaculated on her chest. Immediately afterwards, Defendant Bryant offered her a towel to wipe-off the semen. It was only at that point "Dr. Brian Bryant" allowed the release of her suboxone prescription. The experience was extremely upsetting to Patient A, and she did not return to HWMC for treatment. On June30, 2016, Patient A took her shirt and bra that contained Defendant Bryant's semen to the Dublin Police Station. Patient A will testify that she is a Medicaid patient and had the prescription filled at a local pharmacy.

To corroborate Patient A's testimony, the United States also intends to introduce the testimony of two Dublin Police Officers who received the clothing from Patient A, and who subsequently took a DNA sample and statement from Defendant Bryant. As further corroboration of the incident, the United States intends to introduce the DNA report and analysis completed by Forensic Analyst Hallie Dreyer from the Bureau of Criminal Investigations conclusively showing that the DNA found in the semen on the clothing submitted by Patient A matches the DNA of Defendant Bryant.

The United States also intends to introduce medical records of Patient A showing that the suboxone prescription released to her on June 25th was signed by Dr. Dwight Mosley, a physician who never examined or met with Patient A on that day. Finally, the United States intends to introduce the Medicaid claims and billing records showing that the claim for the suboxone prescription received by Patient A was submitted to and paid for by the Ohio Medicaid program.

The evidence the United States is seeking to introduce at trial is highly probative as it demonstrates the manner in which Defendant operated his scheme. The defendant was able to

6

execute his scheme by abusing his authority as an owner and operator of HWMC and falsely representing himself to patients as a licensed physician having authority over who received prescriptions. The June 25th incident clearly reflects such abuse. In support of Patient A's testimony, the United States intends to introduce the testimony of several other HWMC patients and employees, as well as introduce medical records showing Defendant Bryant not only representing himself as a physician to patients, but actually treating patients as if he were a physician. Furthermore, the encounter not only provides proof of how the scheme operated, but also provides a specific act of health care fraud. The evidence will show that Patient A's suboxone prescription, which was not legally issued because the doctor who signed the prescription (Dr. Mosley) never met with Patient A on June 25th, was submitted to and paid for by Medicaid.

    Secondly, the incident forms an integral part of Patient A's testimony and completes the story of the health care fraud scheme and conspiracy. The evidence shows how Defendant Bryant inappropriately conducted himself with vulnerable patients addicted to opioids, including Patient A, and used his contrived authority as a physician to take advantage of them. Such conduct lies at the heart of the health care fraud scheme and provides the complete story of how Defendant Bryant was able to commit health care fraud.

    Thus, contrary to defendant's argument that there is no plausible link between the evidence supporting the June 25th incident and the charged health care fraud scheme, the evidence is intrinsic and inextricably intertwined to the charged offenses because it not only provides proof of the manner in which the defendant executed the health care fraud scheme, but was also part of the charged scheme and explicitly alleged in the indictment.

b. <u>Other Acts evidence of Defendant Bryant's conduct surrounding the release of a suboxone prescription to a female Medicaid patient at HWMC is admissible Pursuant to FRE 404(b)</u>

Defendant next argues that the evidence of the June 25th incident should be excluded pursuant to Rule 404(b) because it offers little or no probative value, is being offered to show defendant's bad character and any probative value the evidence has is substantially outweighed by it potential prejudicial effect. Defendant's second argument is also without merit

Federal Rule of Evidence 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Admission of evidence under Rule 404(b) is subject to the requirements of Rule 403, which provides that "[a]lthough relevant, evidence may be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice." Fed. R. Evid. 403 (emphasis added).

As correctly noted in Defendant Bryant's instant motion, in light of these two rules of evidence, the Sixth Circuit has elaborated a three-part test for determining the admission of Rule 404(b) evidence:

First, the district court must make a preliminary determination regarding whether there is sufficient evidence that the "other acts" took place. The district court must then determine whether those "other acts" are admissible for a proper purpose under Rule 404(b). Finally, the district court must determine whether the "other acts" evidence is substantially more prejudicial than probative. *United States v. Lattner,* 385 F.3d 947, 955 (6th Cir. 2004).

Under the first prong of the 404(b) analysis relating to whether the other acts took place, the Supreme Court has held that the government is not required to demonstrate that the other acts occurred by a preponderance of the evidence.

(6th Cir. 2008) (citing *Huddleston v. United States,* 485 U.S. 681, 689 (1988)). Rather, the United States may introduce evidence of "other acts" if "the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Bell,* 516 F.3d at 441.

The defendant argues that the United States cannot satisfy this initial prong. Defendant's argument is premised on the actions of the Dublin Police, who investigated the June 25th incident involving Patient A. Defendant Bryant claims that the Dublin Police declined to pursue a criminal case against him because of inconsistencies in Patient A's statements and for lack of evidence showing coercion or force on the part of Defendant Bryant. Defendant's argument is misguided. First, the Government is not alleging that Defendant Bryant "physically forced or coerced" Patient A to engage in sexual conduct. Rather, the United State alleges that he took advantage of Patient A's belief that he was a licensed physician and had control over whether she would receive the prescription, to perversely withhold her suboxone prescription (which was illegally issued) until after he sexually gratified himself. Whether Defendant Bryant used "physical force or coercion" is not relevant. Secondly, the lack of criminal charges by local law enforcement certainly is not indicative of whether the incident occurred. Quite the opposite. The evidence that this incident occurred is overwhelming. First, the Government's intends to introduce DNA evidence that will conclusively show that the semen found on the clothing of Patient A was Defendant Bryant's. The evidence will also show there was no other legitimate means by which his semen could be on her clothing. He was in charge of an opioid addiction facility where the victim was a patient and she had only known Defendant Bryant for approximately 2 weeks prior to the incident. The evidence will show that Patient A's interaction with Defendant Bryant was merely in her capacity as a patient seeking treatment at HWMC. She

9

had no other contact with Defendant Bryant outside of the facility. Thus, the evidence of the incident is strong.

Defendant also alleges that there is insufficient evidence to show an abuse of trust of authority. Defendant's allegation is erroneous. The United States intends to produce multiple witnesses who will testify that they not only believed that "Dr. Bryant" was a licensed physician, but that he would see and treat patients, including many female patients, as if he was an actual medical doctor. The testimony is corroborated by patient medical records and other clinic records.

In this case, the testimony and direct knowledge of the Government's witnesses, as well as document evidence supporting their testimony, including forensic DNA analysis and medical records of HWMC patients, will clearly satisfy this first prong.

The second prong of the test is whether the evidence is for a proper purpose under Rule 404(b). In addressing this second prong, the Sixth Circuit has found that Rule 404(b) should be viewed as a rule of inclusion rather than exclusion. *United States v. Myers*, 102 F.3d 227, 235 (6th Cir. 1996).

Defendant Bryant claims that there is no evidence of health care fraud in the June 25th incident and therefore offers no probative value to any material issue. In support of his claim, Defendant Bryant argues that he had no physician-patient relationship with the patients at the clinic.

Defendant Bryant's claim is without merit. The testimony and documents the Government is seeking to introduce will provide evidence of defendant intent, knowledge and plan to commit health care fraud, as well as providing evidence of an explicit instance of health care fraud. As noted earlier, the foundation of the health care fraud scheme is that defendant

knowingly and intentionally caused the submission of fraudulent claims for prescriptions that were not legitimately prescribed. Proof of defendant's knowledge and intent is demonstrated when he distributes prescriptions that he knows were not legally prescribed, such as he did on June 25th. Furthermore, to carry-out the scheme, it was part of defendant's plan to abuse his position of trust and deliberately portray himself as physician authorized to determine the manner in which prescriptions were issued and to whom they were issued. The indictment expressly provides that as a pharmacist, Defendant Bryant was not permitted to make medical decisions about what drugs patients should receive, or qualified to write scripts or dictate what drugs should be prescribed to patients. (ECF No. 4 at 74.) The evidence the United States intends to introduce will demonstrate that it was part of the defendants intent and plan as operator of HWMC, and as "Dr. Bryant", to abuse his position and take advantage of clinic patients, who were extremely vulnerable because of their addictions, in order to control the distribution of prescriptions that had not been legitimately prescribed and perpetuate the health care fraud scheme. The evidence will further show that a claim for the specific prescription illegally issued to Patient A was submitted to and paid for by Medicaid. Finally, contrary to Defendant Bryant's argument that he had no physician-patient relationship with clinic patients, the United States, as discussed earlier, intends to introduce the testimony of several HWMC employees and patients who will testify that "Dr. Bryant" saw and treated HWMC patients like he was a doctor. The testimony will be supported by patient medical records and other documents. Thus, the evidence the Government intends to introduce provides probative evidence of Defendant Bryant's intent, knowledge and plan to commit health care fraud.

   The third prong of the test is whether the probative value of this evidence is substantially outweighed by the chance of unfair, or undue, prejudice, pursuant to Fed. R. Evid 403(b). The

probative value of the evidence is high—the United States will need to show how defendant Bryant operated the scheme and provide proof of a specific act of health care fraud as alleged in the indictment.  Furthermore, the burden for excluding the evidence is high, since the prejudice must be both "unfair" and "substantially outweigh" the probative value.  *United States v. Scott* 69 Fed. Apppx. 317, 323 (6th Cir.)   "Unfair prejudice" requires more than showing that the evidence is prejudicial or damaging.   *United States v. Mendez-Ortiz*, 810 F.2d. 76,79 (6th Cir. 1986); . Evidence is unfairly prejudicial when it "tends to suggest decision on an improper basis," but is not unfairly prejudicial when it only damages the defendant's case due to the legitimate probative force of the evidence.  *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)(quoting *United States v. Schrock*, 855 F. 2d. 327, 333 (6th Cir. 1988). Thus "evidence that is prejudicial only in the sense that it paint defendant in a bad light is not "unfairly prejudicial" *United States v. Chambers,* 441 F.3d. 438, 456 (6th Cir. 2006) quoting *United States v. Sanders*, 95 F.3d 449, 453(6th Cir. 1996). Even if evidence is considered "highly prejudicial", it does not mean that it is "unfairly prejudicial" if it provides legitimate probative force of evidence. *United States v. Bilderbeck* 163 F.3d 971(6th Cir. 1999).

The evidence the government is seeking to introduce in this case not only provides legitimate probative force of evidence, it is an actual component of the overall health care fraud scheme and is expressly charged in the indictment. Evidence of conduct that is expressly charged in an indictment is not unfairly prejudicial. *United States v. Firempong*, 624 Fed. Appx. 497, (9th Cir. 22015) This was illustrated in *Firempong* where the Government had charged the defendant with health care fraud and was seeking to introduce evidence that power wheelchairs were used to recruit Medicare Beneficiaries. (*Id.* at 500.) The Court determined that the evidence the government was seeking to introduce was not unfairly prejudicial to the defendant since the

evidence provided proof of the manner in which the scheme operated, was part of the charged scheme and was explicitly alleged in the indictment. Id.

Like in *Firempong*, the evidence the United States intends to introduce in this case provides proof of the manner in which the health care fraud scheme operated, was part of the charged health care fraud scheme and conspiracy, and is explicitly alleged in the indictment. As such, the evidence is highly relevant, and while the evidence may be prejudicial and paint the defendant in a bad light, the prejudice is not unfair and does not substantially outweigh it probative force. In addition, any potential harm could be minimized with a limiting jury instruction.

Consequently, the chance of the jury drawing unfair or irrelevant conclusions concerning the defendant is minimal, and any potential prejudice does not *substantially* outweigh the probative value of telling the full story of the crimes to the jury.

Conclusion

Wherefore, the Government respectfully request that the Court allow the admission of the categories of evidence discussed above. This evidence is admissible since it is intrinsic and inextricably intertwined with the health care fraud scheme, was explicitly alleged as part of the charged health care fraud scheme and provides proof of the manner in which the scheme operated; or in the alternative, the evidence is admissible to show, intent, knowledge and plan pursuant to Fed. R. Evid. 404(b).

    Respectfully submitted,

    BENJAMIN C. GLASSMAN
    UNITED STATES ATTORNEY

    /s/ Kenneth F. Affeldt
    KENNETH F. AFFELDT (0052128)
    MARITSA A. FLAHERTY (0080903)
    Assistant United States Attorneys
    303 Marconi Boulevard, Suite 200
    Columbus, OH 43215
    Phone: (614) 469-5715
    Fax: (614) 469-5653
    ken.affeldt@usdoj.gov
    maritsa.flaherty@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that copy of the foregoing Response to Defendant Bryant's Motion in Limine was served this 21st day of November, 2018, electronically on counsel of record.

/s/ Kenneth F. Affeldt
KENNETH F. AFFELDT (0052128)
Assistant United States Attorney